UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT K. BRANNON,

                Petitioner,               Case No.  2:14-cv-11212
                                             Hon. Gershwin A. Drain

v.

LLOYD RAPELJE,

                Respondent.
_____/

**OPINION AND ORDER CONDITIONALLY GRANTING
PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas case under 28 U.S.C. § 2254. After a jury trial in Monroe County

Circuit Court, Robert Brannon ("Petitioner") was convicted of first-degree criminal sexual

conduct, MICH. COMP. LAWS §750.520b, and sentenced to 20-to-40 years imprisonment.

The  petition raises eleven claims: 1) trial counsel was ineffective for failing to adequately

investigate and failing to present expert testimony regarding the reliability of the victim's

testimony, 2) trial counsel was ineffective for failing to object to opinion testimony from a

police office, 3) trial counsel was ineffective for failing to object to hearsay testimony from

the victim, 4) trial counsel was ineffective for failing to obtain the victim's psychological

records, 5) the prosecutor committed misconduct, 6) the conviction was against the great

weight of the evidence, 7) Michigan Compiled Law § 768.27a violates the constitutionally

mandated presumption of innocence, 8) the trial court erred in failing to hold a pretrial

hearing on the victim's aunt's testimony, 9) the trial court erred in failing to disqualify the

trial prosecutor, 10) the trial court incorrectly scored the sentencing guidelines, and 11)

Petitioner's sentence is cruel and unusual. The Court finds that Petitioner's habeas claim

regarding ineffective assistance of counsel for failure to adequately investigate has merit.

Therefore, the petition for a writ of habeas corpus will be conditionally granted as to that

claim.  Accordingly, the Court need not and does not address Petitioner's remaining claims.

## I.  Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals; such facts are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of engaging in sexual penetration with a six-year-old niece in the summer of 1995, at the home of the victim's maternal grandparents in Temperance, Michigan. The alleged act of penetration involved defendant's insertion of a crayon into the victim's anal opening. The victim did not tell anyone else about the incident until approximately ten years later, after she learned that defendant had sexually molested one of her aunts (defendant's sister-in-law). That aunt testified that she was 15 years old when defendant first sexually assaulted her and that defendant engaged in inappropriate sexual contact with her on several subsequent occasions. Like the victim, the aunt delayed telling anyone about the sexual assaults. The aunt testified that she did not tell anyone because defendant threatened to leave her sister if she told. The aunt additionally testified that she did not want to disrupt the family and that defendant assured her that he was not engaging in inappropriate conduct with anyone else. Defendant argued at trial that the victim's testimony was not credible, and he also presented an alibi defense to show that he was never at the home of the victim's grandparents during the summer of 1995.

*People v. Brannon*, No. 303267, 2013 WL 4528453, at *1 (Mich. Ct. App. Aug. 27, 2013).

Following his conviction and sentence, Petitioner obtained appellate counsel who

filed a motion for new trial, raising claims of ineffective assistance of counsel, prosecutorial

misconduct, great weight of the evidence, and the erroneous admission of evidence.  The

trial court denied the last three claims in an opinion and order dated February 25, 2009, but

it granted an evidentiary hearing on Petitioner's first claim.

At the evidentiary hearing, defense counsel Michael Schloff ("Schloff") testified that,

2

prior to trial, he investigated the possibility of obtaining an expert witness to render an opinion regarding the reliability of the victim's testimony, and he contacted three potential experts: Dr. Campbell, Dr. Galtazar-Levy, and Dr. Poole. Schloff also was aware that the prosecutor had contacted a proposed expert witness, Dr. Kathleen Okla. Schloff obtained a transcript of Dr. Okla's testimony from another case and spoke with an attorney from that case. Schloff then spoke to the potential expert he intended to call to testify at trial, Dr. Campbell, about Dr. Okla. On the basis of his review of Dr. Okla's testimony in the other case and speaking with Dr. Campbell, Schloff concluded that Dr. Okla would testify favorably for the prosecution. Schloff did not contact Dr. Okla prior to trial, however, because he believed she was protected by the attorney-client privilege. Schloff also did not contact the prosecutor's office to seek consent to contact Dr. Okla.

Dr. Campbell testified at the hearing that he had informed Schloff that he could provide useful testimony in his case. Dr. Campbell did tell Schloff that he would agree with some of the opinions Dr. Okla had expressed in the other case and that such opinions would not benefit the defense. Dr. Okla testified at the hearing that she was contacted by the prosecution prior to trial, but she had not evaluated the case or arrived at an opinion as to the reliability of the victim's testimony at that time. In fact, Dr. Okla's review of Petitioner's case did not occur until she prepared for the evidentiary hearing.

Two weeks prior to trial, the prosecutor indicated to Schloff that the prosecution would not call Dr. Okla as a witness. Schloff did not contact Dr. Okla at that time, either, because he did not believe he could add Dr. Okla as a defense witness. Schloff also testified that, because Dr. Okla was not being called by the prosecution, he decided not to call Dr. Campbell. Schloff testified that he felt Dr. Campbell no longer was needed to

3

counter what Schloff assumed would be damaging testimony from Dr. Okla. As a result, neither party called an expert witness to testify at trial regarding the reliability or credibility of the victim. Petitioner also presented the testimony of a defense attorney experienced in handling this type of case. That defense attorney testified that, in her opinion, Schloff was ineffective for failing to contact Dr. Okla and for failing to call a defense expert at trial.

After hearing the evidence, the trial court granted Petitioner's motion for a new trial. The trial court found that Schloff was ineffective for failing to adequately investigate the benefit of calling expert witnesses at Petitioner's trial and for his failure to contact Dr. Okla. The trial court found that, in light of the expert witnesses' testimony regarding problems with the victim's credibility, Schloff's failures deprived Petitioner of a substantial defense.

The prosecutor filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals, in an 2-to-1 decision, affirmed the trial court's decision. *Id.* The Michigan Court of Appeals summarized the two expert witnesses' testimony with respect to their opinions about the victim's credibility as follows:

> Dr. Campbell (listed on defendant's witness list) and Dr. Okla (listed on the prosecution's witness list) testified at the *Ginther* hearing that they would have testified at trial to the social influences on memory, which was important in this case because family members discussed with the complaining witness other sexual assault allegations against defendant prior to the complaining witness's disclosure. In addition, Dr. Campbell and Dr. Okla would have addressed the effects on memory caused by the ten-year delay between the date of the alleged incident and when the complaining witness reported it. Also, they would have addressed the problems with the forensic interview of the complaining witness conducted by Detective David Berg at the Kane County Child Advocacy Center in Illinois. Furthermore, they would have addressed the memory creation capacities of a six year old and how the complaining witness's failure to fully disclose all of the details on the first telling, and adding details on each telling of the incident, was contrary to how children generally provide all of the details once they tell someone about sexual abuse for the first time.

4

*People v. Brannon*, No. 292617, 2010 WL 1052272, at *3 (Mich. Ct. App. Mar. 23, 2010). The prosecutor appealed that decision to the Michigan Supreme Court.  The Michigan Supreme Court summarily reversed and vacated the trial court's grant of a new trial, then remanded the case to the trial court for purposes of reinstating Petitioner's conviction. *People v. Brannon*, 784 N.W.2d 205 (Mich. 2010) (table).

After the trial court sentenced Petitioner to 20-to-40 years imprisonment on his conviction, Petitioner filed a claim of appeal in the Michigan Court of Appeals.  Petitioner raised the following claims:

> I. Trial counsel rendered ineffective assistance of counsel by failing [to] engage in a reasonable investigation when deciding to pursue expert witness testimony, and when counsel failed to challenge the MCL 768.27a evidence under a MRE 404(b)(1) and MRE 403 analysis.
>
> > A. While the order from the [Michigan] Supreme Court is governed by the "law of the case" doctrine, Mr. Brannon is raising an independent basis of ineffective assistance of counsel based on failure to investigate.
> >
> > B. Trial counsel's representation fell below an objective standard of reasonableness when counsel failed to engage in a reasonable investigation when deciding to pursue expert witness testimony.
> >
> > C. Trial counsel's representation fell below an objective standard of reasonableness when he failed to object to the testimony of the complainant that she "knew" that her [aunt] had been molested previously by Mr. Brannon, when he failed to challenge the MCL 768.27a evidence under a MRE 404(b)(1) and MRE 403 analysis.
> >
> > D. Counsel was ineffective for failing to seek to obtain the complainant's medical and/or psychological records to challenge the complainant's veracity.
> >
> > E. The totality of trial counsel's ineffectiveness so prejudiced Mr. Brannon as to deprive him of a fair trial.

5

II. The prosecutor's comments during closing arguments that the evidence was completely "uncontroverted" and that Mr. Brannon "doesn't challenge that [the offense] occurred" violated the [sic] Mr. Brannon's Fifth Amendment rights, as the comments directed the jury's attention to Mr. Brannon's decision not to testify, and Mr. Brannon was denied effective assistance of counsel by his attorney's failure to object.

III. The conviction should be set aside because it is against the great weight of the evidence, and a miscarriage of justice will it [sic] is allowed to stand.

IV. MCL 768.27a violates the constitutional right of the presumption of innocence and infringes on the Supreme Court's authority.

V. Mr. Brannon's due process rights under the federal and state constitutions were violated when the trial judge failed to hold an evidentiary hearing to determine the scope of [the victim's aunt's] testimony.

VI. Mr. Brannon's due process rights under the federal and state constitutions were violated when the trial judge refused to disqualify prosecutor Anne McCarthy from prosecuting the case, when defense counsel established that she was likely to be a witness at trial.

VII. Offense variable 2 (OV2) of the judicial sentencing guidelines, for "bodily injury", was incorrectly scored at 25 points in computing the recommended minimum sentence range for the offense.

VIII. The trial court abused its discretion in imposing a 20 to 40 year sentence, when the sentence exceeded the sentencing guidelines, but the reasons given for imposing it rather than a sentence within the guidelines were inadequate and improper and did not justify departure.

IX. Mr. Brannon must be resentenced because the sentencing judge failed to give reasons for the extent of the departure.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. *Brannon*, 2013 WL 4528453, at *1. Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court, wherein he raised the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by that court. *People v. Brannon*, 843 N.W.2d 191 (Mich. 2014) (table).

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under §

2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a

[different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks

omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is

available if "the state court identifies the correct governing legal principle from [the Supreme

Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks

omitted). "In order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect

or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*,

539 U.S. 510, 520-21 (2003) (citations omitted). Indeed, under the "unreasonable

application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations,

quotation marks, and alterations omitted). "When reviewing state criminal convictions on

collateral review, federal judges are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that they were

wrong." *Woods v. Donald*, __ U.S. __, 135 S.Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015).

"Federal habeas review thus exists as 'a guard against extreme malfunctions in the state

criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.*

(quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was

right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766,

778 n.3 (2010). The question is whether the state court's application of federal law was

"objectively unreasonable." *Woodall*, 134 S.Ct. at 1702. In short, the standard for obtaining

federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, __

U.S. __, 134 S.Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III.  Analysis

### A.  Applicable Legal Standard for Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a

two-prong test for determining whether a habeas petitioner's counsel was ineffective. First,

a petitioner must prove that counsel's performance was deficient. This requires a showing

that counsel made errors so serious that he or she was not functioning as counsel

8

guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id.*

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Because the state courts rejected these claims on the merits, however, it is beyond the scope of review for this Court to evaluate Petitioner's claim *de novo* under the *Strickland* standard. The issue here is much more narrow. The question is whether the conclusion reached by the state court falls within the bounds of reasonable adjudications of Petitioner's claims — a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, "because the *Strickland* standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

Because of this doubly deferential standard, the United States Supreme Court has stated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105.

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S.Ct. at 786.

## B. Failure to Investigate and Call Expert Witnesses

Petitioner claims that his trial counsel was ineffective for failing to investigate and call experts to testify at trial.  The Michigan Supreme Court considered and summarily denied this claim on the merits after the prosecutor appealed the trial court's grant of a new trial:

> The record clearly established that defense counsel discussed issues of delayed reporting of sexual assault by a child witness with a potential expert witness, and made a reasonable strategic decision to forego expert testimony in light of the possibility that the witness might also provide testimony favorable to the prosecution.

*Brannon*, 784 N.W.2d at 205.

10

The Court begins by noting that it agrees with the result reached by the trial court. The trial court heard the evidence at trial and at the evidentiary hearing, and it was best situated to decide whether Petitioner was entitled to a new trial.  Based on the testimony of the two expert witnesses at the evidentiary hearing, there were substantial questions regarding the reliability of the victim's testimony that the jury never heard, rendering the verdict unreliable. Schloff's failure to interview Dr. Okla in order to ascertain her opinion on the reliability of the victim's memories was objectively deficient.  Even more shocking and egregious were: (1) Schloff's admission that he thought he was somehow prohibited from interviewing Dr. Okla because she was an expert witness listed by the prosecution, and (2) his belief that he could not call Dr. Okla as a witness when the prosecutor informed Schloff the prosecution would not call her.

Respondent contends that, because Dr. Okla did not examine the facts of Petitioner's case until shortly before the evidentiary hearing, Schloff would not have immediately found her to be a favorable witness if he had contacted her prior to trial.  Even if that was true, it would not have mitigated Schloff's deficient and ineffective assistance of counsel.  Rather, it just meant that Schloff had to start asking Dr. Okla questions and presenting her with facts about the case in the same manner he did with each of the other three potential expert witnesses.  The Court also is not persuaded by Respondent's contention that Schloff was not required to "take the lead" and be the first attorney to provide with the facts of the case, because the prosecution certainly did not have the responsibility to do so on behalf of Petitioner.  Rather, Schloff had an obligation to his client to provide Dr. Okla with the facts of the case and ascertain whether she would or would not be a favorable witness. *See, e.g.*, *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (a

11

defense attorney's duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.").

For these reasons, and as discussed in more detail below, the Court finds that Petitioner has clearly established that Schloff's acts were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  In reaching this conclusion, the Court has been cognizant that it must evaluate the trial attorney's decisions from the perspective of what a reasonable attorney would have done at the time those decisions were made. *Richter*, 562 U.S. at 107.  Even under that standard, the Court finds that Schloff's conduct was "so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 134 S.Ct. at 1702.

As established at the evidentiary hearing, had Schloff contacted Dr. Okla prior to trial and provided her with the discovery materials and obtained her opinion, he never would have agreed with the prosecutor to "waive" the calling of expert witnesses.  Instead, Schloff would have presented the testimony of Dr. Okla and Dr. Campbell, both of whom would have raised serious questions regarding the credibility and reliability of the victim.  For these reasons, and as discussed in more detail below, the Court finds that Schloff's "conduct so undermined the proper functioning of the adversarial process that [Petitioner's trial] cannot be relied on as having produced a just result." *Id.* at 686.  Therefore, the Court finds that Petitioner has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In sum, the Court finds that: (a) Petitioner has established that Schloff was not functioning as counsel guaranteed by the Sixth Amendment, and (b) the failure to

appropriately investigate and call any expert witness constituted an error so serious that it deprived Petitioner of a fair trial. *Id.* at 687.

For purposes of habeas review, however, the Court's belief regarding the reliability of the result of Petitioner's trial is not determinative. The much more limited issue before the Court is whether the Michigan Supreme Court's summary rejection of Petitioner's ineffective assistance of counsel claim resulted in an unreasonable application of clearly established Supreme Court law under 28 U.S.C. §2254(d). As indicated in the cases cited above, this statutory section has been interpreted by the Supreme Court to provide a substantial amount of deference to state court merit adjudications. Notwithstanding that substantial deference owed to the state courts under §2254(d), the Court concludes that habeas relief is warranted in this case.

The record established at the evidentiary hearing held in the trial court shows that defense counsel <u>knew</u> the case was going to hinge on the credibility of the victim who was making a ten-year delayed disclosure. Although Schloff consulted with three potential expert witnesses in preparation for trial (Dr. Campbell, Dr. Galtazar-Levy, and Dr. Poole), he did not call any of them – or anyone else – as an expert witness at trial.  With respect to Dr. Galtazar-Levy and Dr. Poole, there was good reason not to call them:  Dr. Poole was not available, and after speaking with Dr. Galtazar-Levy multiple times, Schloff understood that Dr. Galtazar-Levy was involved in another case brought against Petitioner in Illinois. Therefore, even though Dr. Galtazar-Levy may have had some favorable testimony, Schloff reasonably decided not to use Dr. Galtazar-Levy out of concern that Dr. Galtazar-Levy might inadvertently mention the Illinois charges at trial.

Dr. Campbell posed no such danger, however, and Schloff testified that he sent Dr.

13

Campbell some of the discovery materials in the case for review. After reviewing the materials, Dr. Campbell informed Schloff that he could testify favorably for the defense. Dr. Campbell stated that his testimony "would have both good and bad components." Tr. 4/8/2009, pp. 19-20.  It is a rare witness, however, who can testify without having the "good components" subjected to mitigation on cross-examination.   More significantly, Dr. Campbell "indicated some areas that [] he felt he could present testimony that could be used to attack [the victim's] credibility." *Id.* at 21.

In preparation for Dr. Okla's potential testimony, Schloff obtained the trial transcript from another trial at which Dr. Okla testified, and he spoke with an attorney from that case. He also talked with Dr. Campbell about Dr. Okla.  Based on those efforts but without contacting or communicating in any manner with Dr. Okla herself, Schloff concluded that Dr. Okla would provide testimony favorable to the prosecution.  Schloff explained that, based on Dr. Campbell's statements to him about Dr. Okla's views, Schloff believed that Dr. Okla would give an explanation for a delayed disclosure. *Id.* at 25-26.  Because he did not contact Dr. Okla, however, Schloff never learned that: (1) the prosecutor never gave Dr. Okla any materials about Petitioner's case, and (2) Dr. Okla had not developed any opinion about the case at that point. *Id.* at 140-141.

Schloff's failure to contact Dr. Okla is objectively unjustifiable.  Schloff belief that he was prohibited from contacting Dr. Okla directly because she was an expert retained by the prosecution is inexplicable – any law student who has taken a criminal procedure class would know better.  Schloff's conduct became even more egregiously deficient and ineffective when the prosecutor informed Schloff a few weeks before trial that the prosecution would not call Dr. Okla to testify.  Once again, inexplicably, Schloff believed

14

he could not call Dr. Okla as an expert witness.  As such, Schoff did not contact Dr. Okla to find out what her opinion would be at that time, either.  Schloff's omissions together constituted an unquestionably erroneous decision because common sense dictated the presumption that, because the prosecution was not calling Dr. Okla, her opinion would not have buttressed the credibility of the victim.

Morever, and further compounding the harm to Petitioner, instead of reaching the only logical conclusion for the prosecution not calling Dr. Okla (*i.e.*, her testimony would not benefit the prosecution), Schloff remarkably began to rethink whether to call Dr. Campbell as an expert witness for the defense.  Schloff offered the following explanation for his thinking:

> Well, first of all, I was very concerned that the prosecution was going to have expert testimony in an attempt to explain to the jury that a ten year delay in reporting can certainly be acceptable, it's common, and is not necessarily an indication of a false statement or of - of made up statement, or of contrived statement.

> And so my purpose in contacting Dr. Campbell and considering Dr. Poole was to attempt to have an expert to rebut the explanation that the prosecution was given. I felt that the jury, when it initially heard that there was a ten-year delay, was gonna be very bothered by that and was gonna be quite suspicious of that delay and was going to want to hear why that delay occurred or perhaps how it could be explained. And I fully expected that Katherine Okla would provide that answer.

> When the prosecution announced about two weeks before trial that they were not gonna provide that answer through an expert witness, I felt that was an advantage to us. I was further concerned, however, with some things that Dr. Campbell had told me during one of our conferences, and that was that in many respects he would have to agree with what he felt would be some of the opinions of Katherine Okla. And that is that delay in reporting can be a common phenomenon and is not necessarily indicative of a false statement or a contrived statement.

> And so my concern was that if the prosecution was not gonna provide the jury with an expert opinion that could explain the delay, my own witness

15

might provide just that opinion.

*Id.* at 24-25.  Ultimately, Schloff not only failed to ascertain what Dr. Okla thought of the case, he also elected to not call Dr. Campbell.  As such, Schloff presented a defense with no expert testimony to challenge and undermine the reliability and credibility of the victim, which Schloff knew to be critical to the outcome of the trial.

Schloff's investigation into whether to call an expert witness was indisputably deficient. Schloff was mistaken that he was prohibited from talking to Dr. Okla directly. As Petitioner correctly notes, a defense attorney's duty to investigate "includes the obligation to investigate <u>all</u> witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d at 258 (emphasis added). "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id*.  Therefore, although "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *Mirzayance*, 129 S. Ct. at 1420 (citing *Strickland*, 466 U.S. at 690), Schloff's failure to even interview all of the witnesses, specifically Dr. Okla, clearly establishes that Schloff did not conduct a thorough investigation.

If Schloff had contacted Dr. Okla, he would have discovered that Dr. Okla had not yet studied the facts of the case or arrived at an opinion. If Schloff then would have asked her to exam the case, Schloff would have learned that Dr. Okla would have testified favorably for the defense, resulting in a completely different trial.  At that entirely different trial, the jury would have heard testimony from <u>two</u> expert witnesses that there were serious questions about the reliability and credibility of the victim due to: (1) her age (6) and her memory capacity at the time of the alleged crime, (2) her failure to disclose all of the details

16

on the first telling and adding details on each telling of the incident, (3) the lapse of 10 years between the alleged crime and the time it was reported, and (4) the social influences on memory that could have been caused by family members discussing other sexual assault allegations against Petitioner prior to the victim disclosing the alleged sexual assault that is the basis of Petitioner's conviction. The undeniable fact is that the jury never heard significant evidence that would have undermined the victim's credibility.   It is equally undeniable that Schloff's failure to present that evidence at trial was the result of his egregiously inadequate investigation and ineffective assistance of counsel.   Petitioner, therefore, has established that he is in custody in violation of his federal constitutional rights. *See* 28 U.S.C. § 2254(d).

For the reasons set forth above, the Court finds that the Michigan Supreme Court's conclusion that "defense counsel made a reasonable strategic decision to forego expert testimony in light of the possibility that the witness might also provide testimony favorable to the prosecution" was "objectively unreasonable." *Wiggins*, 539 U.S. at 520-21.   The Court further finds that fairminded jurists could not disagree that the conclusion reached by the Michigan Supreme Court was erroneous, *Richter*, 131 S. Ct. at 786, because there is no "reasonable argument that [Schloff] satisfied *Strickland's* deferential standard. *Knowles*, 556 U.S. at 105.   And, having reached that conclusion, the Court may overturn the decision of the Michigan Supreme Court because there can be no reasonable dispute the Michigan Supreme Court was wrong. *Woods*, 135 S. Ct. at 1376.

Therefore, in accord with the parameters of §2254(d), and for the reasons set forth above, the Court grants habeas relief with respect to this claim of ineffective assistance of counsel because: (1) Schloff's actions were unreasonable and prejudicial, and (2) the

17

conclusion reached by the state court does not fall within the bounds of reasonable adjudication of Petitioner's claim. *Knowles*, 556 U.S. at 105, 123. The Court orders the Respondent to either (1) set a new trial date within ninety days of the entry of this order, or (2) release Petitioner unconditionally.

### IV. Conclusion

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY GRANTED**.

**IT IS FURTHER ORDERED** that Respondent shall release Petitioner from custody unless Respondent brings him to trial again within ninety days, subject to the exclusions from such period allowed by 18 U.S.C. § 3161(h).

**SO ORDERED.**

/s/Gershwin A Drain_____
Honorable Gershwin A. Drain
United States District Judge

Dated: January 4, 2016